THE NASSAU BANK, Respondent, v. JOSEPH CAMP- BELL and Others, Executors of WILLIAM CAMPBELL, Deceased, Appellants.

*Bills and notes — notes referring to collaterals — release of the collaterals by the holder — it discharges the indorser — tender of the securities.*

A firm being indebted to a bank made two promissory notes, payable on demand, with interest, to the order of one William Campbell, upon the face of which it appeared that there had been deposited, as collateral security for their payment, certain bonds, which were secured by a mortgage upon real estate.

After William Campbell had indorsed the notes for the accommodation of the firm, and they had been turned over to the bank, the mortgage was by the bank made subordinate to what had been a junior lien on the land. The effect of this was to impair the value of the bonds.

In an action brought by the bank against the executors of William Campbell to enforce payment of the notes:

*Held*, that as William Campbell, upon payment of the notes, would have been subrogated to the rights of the bank in the bonds, its act impairing their value discharged him and his estate.

That the bank was not bound to tender the securities or account for them upon the trial.

Appeal by Joseph Campbell, Emma Campbell and Martha Camp- bell, as executors of William Campbell, deceased, from a judgment

of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 27th day of June, 1891, upon a verdict for the plaintiff for $12,874.94 and interest, after a trial at the New York Circuit before the court and a jury.

The evidence tended to show that the firm of Phyfe & Campbell owned property in New York, known as the Plaza. They had mortgaged it to an insurance company, and had given a second mortgage to another person as trustee for bondholders. They needed more money. The insurance company was willing to lend more provided the new mortgage to it should take precedence of the second mortgage to the trustee for the bondholders. The bondholders agreed to this, and their bonds were surrendered and stamped as deferred in payment to the new loan of the insurance company. Prior to this transaction one Wyckoff had borrowed money of the Nassau Bank, and had pledged, as collateral thereto, Plaza bonds which he had received from Phyfe & Campbell, who were indebted to him. Phyfe & Campbell wished Wyckoff to agree to have the payment of his bonds deferred, and he required the indorsement by William Campbell of two notes, which he demanded in part payment of the debt of Phyfe & Campbell to him. Willaim Campbell indorsed the notes for the accommodation of the firm, which were in the following form :

" $5,000.                              NEW YORK, *Apr.* 12, 1886.

" On demand, after date, we promise to pay to Wm. Campbell, or order, Five thousand dollars for value received, with interest at the rate of 6 per cent, per annum, having deposited with this note as collateral security, with authority to sell the same at public or private sale, on the non-performance of this promise and without notice, five Fifth Avenue Plaza Bonds for One thousand dollars each, with accrued interest on the same from Oct. 1, 1884.

.                    " PHYFE & CAMPBELL."

" $4,810.                              NEW YORK, *April* 12, 1886.

" On demand, after date, we promise to pay to Wm. Campbell, or order, forty-eight hundred and ten dollars, for value received, with interest at the rate of 6% per cent per annum ; having deposited with this note, as collateral security, with authority to sell the same at public or private sale, on the non-performance of this promise

and without notice, four Fifth Avenue Plaza Bonds, for one thousand dollars each, with accrued interest on the same from Oct. 2, '84.

"PHYFE & CAMPBELL."

Wyckoff turned the notes over to the bank, which a day or two thereafter allowed the bonds, which it held as collateral, to be stamped as deferred. The bonds subsequently became worthless.

*William H. Arnoux*, for the appellants.

*A. P. Whitehead*, for the respondent.

VAN BRUNT, P. J.:

This action was brought to recover upon two promissory notes drawn on demand, with interest, it appearing upon their face that there had been deposited, as collateral security to the notes, nine Fifth Avenue Plaza bonds for $1,000 each, with accrued interest on the same from October 1, 1884. Each of the notes bore date April 12, 1886, and was made by Phyfe & Campbell and indorsed by William Campbell, the testator of the defendants. All the bonds of the character stated in these notes to have been pledged as collateral were secured by a mortgage upon certain property in the city of New York.

On the 14th of April, 1886, after William Campbell had indorsed the notes in question, the mortgage in question was surrendered with the consent of the holders of the bonds so as to leave the security of the bonds subservient to other loans upon the property mortgaged, which they were not before such cancellation. And this was done without the knowledge of the indorser, William Campbell.

We think this proceeding discharged the indorser. The notes upon their face showed that certain securities were pledged as collateral, and the indorser had a right to assume that these securities would follow the notes in the same condition in which they were at the time he made the indorsement; and any trafficking with these securities, by which their value was impaired, necessarily operated as a release of the indorser.

It is clear that if any person had purchased these notes unaccompanied by the bonds, the indorser would not be held, because, upon payment, he is entitled to be subrogated to the securities there stated to have been pledged for their payment. So, if these securities are

impaired in value by the action of the holder after indorsement of the notes, the same rule must necessarily apply. The indorser was indorsing a note secured in a certain way. His liability to final loss by reason of his indorsement of the note might depend very largely upon the value of the securities pledged for its payment; and, therefore, any diminution of their value was a direct detriment to him. It seems to us, therefore, that the necessary conclusion is, that the changing of these securities subsequent to the indorsement of the notes necessarily releases the indorser, as the bonds which, upon the face of the notes, are represented as accompanying the same, have been severed therefrom.

Some point was made in reference to the protest of the notes in question, that the bonds not having been tendered at the time of the demand the indorser was discharged. But the difficulty with this position is, that no such point was made during the trial, nor is any such point raised by the pleadings. The ground of the motion to dismiss, based upon the question of the collateral securities, was stated to be that, as the plaintiff had neither tendered the return of the securities, nor made any accounting for the same, he could not recover, which, distinctly, did not refer to the time of making the protest, but up to the time of trial; and no attention was drawn to the question as to what was done at the time of the protest. . The plaintiff was not bound to either tender the securities or account for the same upon the trial. If the indorser desired the securities, he could pay the notes. If anything had been released upon the securities, that was a matter of defense.

Upon the whole case, we are of opinion that the judgment should be reversed and a new trial ordered, with costs to appellants to abide event.

LAWRENCE, J., concurred.

O'BRIEN, J.:

The bank held fifteen bonds of the Fifth Avenue Plaza Company as collateral security for the loan of $7,500 to Wyckoff. By agreement between Wyckoff and the bank the bank gave up two of the bonds to Wyckoff, and also permitted the remaining thirteen to be postponed to a new mortgage to be given to the New York Life Insurance Company.

Both of these considerations, as between Wyckoff and the bank, were good and valuable, and, if nothing else appeared, would have been a sufficient consideration for Campbell's indorsement.

There is no doubt that the postponement of the payment of the thirteen bonds to the new mortgage impaired the value of them, and by giving up the two bonds to Wyckoff the bank lessened its security which it held for the payment of Wyckoff's note. To what extent the indorser was injured would, under such circumstances, be a question of fact. The evidence, however, tended to show that this arrangement between Wyckoff and the bank was made prior to April 12, 1886, and that the consideration for the postponement of the payment of the bonds to the new mortgage, and the giving up of the two bonds to Wyckoff by the bank, was under the agreement to deliver the note indorsed by the defendant Campbell. , It will further appear, from the testimony, that the day fixed for stamping the bonds with the statement that they were postponed to the lien of the new mortgage and the giving of the notes sued upon with Campbell's indorsement, was originally April 12, 1886, and the notes bear date as of that day.

The closing of the transaction was, however, postponed until the fourteenth, when Wyckoff went to the bank, obtained the fifteen bonds and had them all stamped as postponed to the new mortgage. The bank, as stated, gave up to him two of the bonds, retaining thirteen, of which thirteen nine are the bonds mentioned in the notes.

Two questions upon this evidence, it seems to me, were presented :

*First.* As to whether the surrender by the bank of the security it then had in consideration of the receipt of the notes indorsed were not part and parcel of one transaction ?

*Second.* Even if this should not be so, whether or not any injury, and if so how much, resulted from postponing the payment of the nine bonds, held as collateral, to the new mortgage?

In connection with these questions it must be remembered that the notes themselves only specified nine bonds, whereas, in point of fact, the bank received and held thirteen. Moreover, it must be noticed that the bonds after being stamped answered the description of the collaterals mentioned in the notes, and thus another inference arises in favor of the view that the indorsement of William Campbell

was obtained by Phyfe & Campbell upon the notes for the purpose of carrying out the very agreement made by Wyckoff with the bank. It is true there is no evidence showing that when Campbell indorsed the notes that knowledge was brought home to him as to the exact use to which they were finally put, or any knowledge that the collateral bonds were to be postponed to the lien of the new mortgage.

There is some evidence to support the conclusion that Phyfe & Campbell, who took part in having the bonds stamped, obtained the indorsement for their accommodation and to carry out the agreement which they had made with Wyckoff for the payment of their debt to him. If, therefore, we assume the adjustment between Wyckoff and the bank to have taken place on the twelfth, and that in consideration of the surrender of the two bonds and the stamping of the remaining bonds as postponed to the lien of the new mortgage, Wyckoff delivered the notes indorsed, and if it be conceded that the bank refused to carry out the arrangement until it received the notes so indorsed, a recovery upon these facts could have been had as against the indorser, for the reason that this would have presented a case where one indorses for the accommodation of another, and notes so indorsed are used for the very purpose for which they were indorsed. The delay from the twelfth to the fourteenth in closing would not change the rights of the parties.

The learned judge, upon the trial, however, directed a verdict in favor of the plaintiff. This, I think was error, for the reason that there were certain questions of fact presented upon the evidence which should have been presented to the jury. I concur, therefore, in the result reached by the presiding justice, that the judgment must be reversed and a new trial ordered.

Judgment reversed and new trial ordered, with costs to appellants to abide event.